**FEDERAL DEPOSIT INSURANCE CORPORATION,**
**Plaintiff–Appellant,**

v.

**Gerald D. CURETON; Mary L. Cureton; Harold W. Hodges; and Carrie L. Hodges, Defendants–Appellees.**

No. 87–5399.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1988.

Decided March 22, 1988.

Patricia Horton (argued), D. Michael Tranum, Knoxville, Tenn., for plaintiff-appellant.

Henry T. Ogle, Ogle and Lowe, Knoxville, Tenn., William H. Ogle (argued), for defendants-appellees.

Before LIVELY, Chief Judge, JONES and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Plaintiff Federal Deposit Insurance Corporation ("FDIC") appeals the summary judgment of the district court dismissing its action against the guarantors of four defaulted promissory notes as time-barred under the Tennessee statute of limitations, Tennessee Code Annotated ("T.C.A.") § 28-3-109.[1] Because we hold that the Tennessee savings statute, T.C.A. § 28-1-105, upon which plaintiff relies, applies only when the original action is timely pursuant to Tennessee Rule of Civil Procedure ("T.R.C.P.") 3, we affirm the summary judgment of the district court.

## I.

This appeal arises out of a civil action to enforce guaranties executed by each of the four defendants on June 16, 1977. These guaranties served as security for four commercial loans made by the former United American Bank in Knoxville ("UABK"), Tennessee, to corporations in which two of the defendants served as officers. Substantial loans were made to these corporations by UABK.

In his capacity as a corporate officer, defendant Gerald D. Cureton executed the following notes on behalf of the John Whelahan Company, Inc.: (1) a $150,000 note, dated April 3, 1978, secured by the defendants' continuing guaranties; and (2) a $110,000 note, dated April 11, 1978, also secured by the defendants' continuing guaranties, as well as an assignment of inventory. As vice-president of Cureton Plumbing Company, Inc., defendant Harold W. Hodges executed a $143,113.87 note, dated June 2, 1978. This note was likewise secured by the defendants' continuing guaranties. Defendant Harold W. Hodges also executed a $200,000 note, dated June 11, 1978, as president of John Whelahan Company, Inc., secured by the continuing guaranties of the defendants.

In September 1978, John Whelahan Company, Inc. and Cureton plumbing Company, Inc. were placed in receivership by an order of the Chancery Court of Knox County, Tennessee, but the guaranties of defendants were not pursued at that time by UABK. Approximately five and one-half years later, or on or about February 14, 1983, the Commissioner of Banking for the State of Tennessee declared that an emergency existed at UABK within the meaning of T.C.A. § 45-2-1502(c)(1) and, pursuant to that statute, assumed possession of UABK. Pursuant to orders of the Chancery Court of Knox County, Tennessee, the notes and continuing guaranties involved in the present case were later transferred from UABK to First Tennessee Bank in Knoxville ("First Tennessee"), Tennessee.

### A.

On April 2, 1984, First Tennessee filed an action in the Chancery Court of Knox County, Tennessee, against the four defendants to enforce the guaranties. Summons was issued that same day, but was later returned "no service—don't have address—May 21, 1984." First Tennessee never obtained service of process and never requested issuance of new process.

Thereafter, on or about August 8, 1984, FDIC paid First Tennessee the value of the notes and guaranties involved in the present case in exchange for their possession. Accordingly, FDIC was substituted as plaintiff in the state court action on November 7, 1984. However, FDIC like-

---

1. T.C.A. § 28-3-109(a)(3) states: "The following actions shall be commenced within six (6) years after the cause of action accrued: ... (3) [a]ctions on contracts not otherwise expressly provided for."

wise failed to request that new process be issued.

On January 25, 1985, the chancellor presiding over the state court action entered an order requiring plaintiff to further prosecute the case. Accordingly, on February 19, 1985, FDIC caused alias process to issue, and on March 16, 1985, defendant Harold W. Hodges accepted service of process on behalf of all defendants. However, on May 28, 1985, defendants filed a motion to dismiss, contending that FDIC's cause of action was barred by the statute of limitations for actions on contracts as set out in T.C.A. § 28-3-109. *See supra* note 1. Defendants asserted that although the chancery court action was timely when filed on April 2, 1984, plaintiff did not preserve that filing date because it did not comply with T.R.C.P. 3,[2] which requires a plaintiff to request a new process or commence a new action if a defendant is not served within thirty days of issuance. FDIC first responded to defendants' motion, but then took a voluntary nonsuit on July 25, 1985, pursuant to T.R.C.P. 41.01. This dismissal did not go to the merits of plaintiff's action.

### B.

Thereafter, on July 15, 1986, FDIC commenced the present case in United States District Court. Defendants filed a motion for summary judgment, which was granted in part by the district court. The court ruled that the Tennessee statute of limitations barred the action at least insofar as two of the notes were concerned. As to the remaining two notes, the court determined that the statute of limitations had been tolled by payments made on those notes. Subsequently, however, defendants

filed a motion to reconsider, arguing that the only payments made on any of the notes were made by the receiver for the insolvent corporations and, consequently, were not voluntary payments which would toll the statute of limitations under Tennessee law.

FDIC countered that the Tennessee savings statute granted it a year from its voluntary nonsuit on July 25, 1985, within which to commence a new action. The savings statute, T.C.A. § 28-1-105, provides:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding his right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or his representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

The district court agreed with defendants and granted summary judgment as to all notes involved in the present case, thereby dismissing plaintiff's action. This timely appeal followed.

### II.

### A.

■ FDIC concedes that the statute of limitations ran at the latest in September of 1984, agrees that the six-year statute of limitations found in T.C.A. § 28-3-109 is applicable to the present case, and further agrees that when its action was commenced in the district court on July 15, 1986, the statutory period had expired.[3]

---

**2.** T.R.C.P. 3 provides:

All civil actions are commenced by filing a complaint with the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether the process be returned served or unserved; *but* if the process is not served or not returned within thirty days from issuance, regardless of the reason, plaintiff, if he wishes to rely upon the original commencement as a bar to the running of the statute of limitations, *must either* prosecute and continue the

action by applying for and obtaining issuance of new process from time to time, each new process to be obtained within *six* (6) months from issuance of the previous one, *or* plaintiff must recommence the action within one (1) year from issuance of the initial process not served or not returned within thirty days from issuance.

**3.** The limitations period for an action on guaranties "commences from the time the plaintiff's right to make demand [is] completed...." T.C.

However, FDIC insists that the Tennessee savings statute, T.C.A. § 28–1–105, "saves" its federal court action. FDIC argues that although service of process was not timely effected in the state court action, its complaint in that action was timely filed, and defendants had notice of it within the statutory period of limitations. Accordingly, FDIC argues that the savings statute applies to grant it an additional year from the time of its voluntary nonsuit of the state court action within which to file the second or federal court action. We hold, however, that the savings statute and T.R.C.P. 3 must be construed in conjunction one with the other, and that the effect of T.R.C.P. 3 is to bar the present federal court action as untimely.

As earlier stated, the action in the present case was filed in the district court on July 15, 1986. The six-year statute of limitations ran in June of 1984 or, as conceded by the plaintiff, in September 1984 at the latest. *See supra* note 3. However, both First Tennessee and FDIC failed to obtain service of process in the state court action which was instituted on April 2, 1984.

In the present case, defendants argue that the savings statute simply does not apply. They rely on the literal language in the statute to the effect that, "*[i]f the action is commenced within the time limited by a rule or statute of limitation,*" then a plaintiff will have one year from a nonmerits dismissal to recommence its action. Defendants' argument is that the April 2, 1984, state court action, although commenced within the time limited by rule or statute, "died" as a result of the plaintiff's failure to request issuance of new process within six months or to refile the action within one year of the state court filing. Accordingly, defendants argue that the savings statute cannot "save" the plaintiff's action as there is nothing to save. We agree.

Whether an action "is commenced within the time limited by a rule or statute" is to be determined by T.R.C.P. 3. *See supra* note 2. By the language of T.R.C.P. 3, an action is commenced by the filing of the complaint which, in this case, was on April 2, 1984. However, as the rule sets out, if service of process is not obtained within thirty days and if a plaintiff wishes to rely on the original commencement as a bar to the running of the statute of limitations, the plaintiff must either obtain issuance of new process within six months from the issuance of the previous process or the plaintiff must recommence the action within one year of the original cause of action. In the present case, neither of the above two courses were taken so as to entitle plaintiff to rely on April 2, 1984, as the date on which its action was initially commenced. Accordingly, the April 2, 1984, commencement date "died," and plaintiff did not timely commence the district court action.

The effect of T.R.C.P. 3 and the Tennessee savings statute was reviewed by the Supreme Court of Tennessee in *Adams v. Carter County Memorial Hospital,* 548 S.W.2d 307 (Tenn.1977). *Adams* involved "an action by a widow for damages for the alleged wrongful death of her husband." *Id.* at 308. The action was brought against two defendants, a hospital and the deceased's treating physician. The complaint was filed on February 8, 1974, a little less than one year after the death of plaintiff's husband, and summons was issued and served on the defendant hospital that same day. However, the physician was not served with process until August 14, 1974, over six months later. The defendant physician moved to quash the summons and dismiss the action against him, arguing that because the plaintiff had failed to prosecute the action, the August 14, 1974, service of process against him was ineffective. The trial court agreed.

The Supreme Court of Tennessee held that the trial court properly quashed the

---

A. § 28–1–102. The right to make demand was completed on the four notes involved in the present case on April 3, 1978, April 11, 1978, June 2, 1978, and June 11, 1978. Thus, as

FDIC's action was commenced on July 15, 1986, the six-year statutory period had long since expired. *See* T.C.A. § 28–3–109.

summons against the defendant physician. The court stated that as the original summons was neither served nor returned unserved within thirty days of being issued, the process became invalid, and plaintiff should have requested issuance of new process within six months.

> We hold that when the summons is not returned at the end of thirty days following its issuance, the plaintiff must apply for and obtain issuance of new process within six months, or recommence the action within one year, of the end of said thirty days period in order to preserve the original commencement of the action as a bar to the running of a statute of limitations.

*Id.* at 309.

The court concluded that since the plaintiff had failed to make application for issuance of new process within six months of the issuance of the previous one, the action was "subject to abatement." Id. at 310. However, the court further concluded that the trial court erred in finding that the statute of limitations had run against the defendant physician since the savings statute saved the plaintiff's action against the physician from being time barred.

> Plaintiff may timely recommence the action against [the physician] by filing a new complaint any time within one year of the entry of judgment of this Court affirming the order of dismissal of the trial court. [T.C.A. § 28-1-105]. This statute applies since the original action was timely filed and is being dismissed upon a ground not concluding the plaintiff's right of action.

*Id.* at 310.

The rule of *Adams* is unclear. On the one hand, the Supreme Court of Tennessee has said that if plaintiffs wish to rely on the date of the filing of their complaint for commencement of their action, they must achieve service within thirty days or request issuance of a new service at least every six months (or recommence within one year). On the other hand, the court seems to be saying that an action "is commenced within the time limited by ... statute," for purposes of application of the

savings statute, so long as the *complaint* is filed within the statute of limitations.

Notwithstanding the apparent obscurity of *Adams*, the present case is controlled in our view by *Little v. Franceschini*, 688 S.W.2d 91 (Tenn.App.1985). In *Little*, the plaintiff filed an action for personal injuries on September 13, 1982, within the applicable one-year statute of limitations. Summons was issued, but the defendant was never served. On February 20, 1984, plaintiff entered a voluntary nonsuit. On the same day, relying on the savings statute, plaintiff filed a second complaint alleging the same cause of action. Defendant then moved to dismiss, arguing that the action was time-barred.

The Court of Appeals of Tennessee affirmed the trial court's dismissal. The court noted that as a factual matter, the plaintiff had complied with the savings statute in commencing a new action within one year of a dismissal "upon a ground not going to the merits of the case." Id. at 93. However, the court further pointed out that the specific language of the savings statute provides that it applies only "[i]f [an] action is commenced within the time limited by a rule or statute of limitation...." *Id.* at 92 (quoting T.C.A. § 28-1-105). The court further noted that T.R.C.P. 3 by its heading controls the issue of when an action is "commenced." Generally, the Rule provides that an action is commenced when the complaint is filed, whether or not process is served. The Rule, however, has an exception; *viz.*, if process is not served within thirty days, plaintiff must either apply for issuance of new process within six months or refile the action within one year in order to rely on the original filing date. Otherwise, the original filing date "dies." *Id.* at 93.

In *Little*, the Court of Appeals of Tennessee distinguished *Adams*. The *Little* court noted that although the plaintiff in *Adams* failed to preserve the original date by neglecting to request, within six months, issuance of new process, there was nothing to suggest that the plaintiff had not recommenced his action within one year from the date of the original process.

Application of *Little* to the facts of the present case clearly indicates that FDIC's action is time-barred. Although FDIC filed its action in district court within one year of the entry of the nonsuit in the state chancery court, FDIC is not entitled to rely on the April 2, 1984, state court filing for purposes of application of the statute of limitations. Under the view of T.R.C.P. 3 taken in *Little* and *Adams*, FDIC could rely on that date only if it had sought the issuance of new process every six months or recommenced the action within one year of that date. Because it did not do so, the April 2, 1984, filing date "died" for purposes of applying the statute of limitations. Accordingly, plaintiff's action in the district court was not "commenced within the time limited by statute," and the savings statute is, by its own terms, inapplicable.

## B.

 Although FDIC conceded at oral argument that it had not complied with T.R.C.P. 3, it nonetheless argues that T.R.C.P. 3 is inconsistent with the savings statute and that the statute must control. It also asserts that the Rule repeals by implication the savings statute. While, in our view, this argument is specious,[4] it was clearly rejected by the Court of Appeals of Tennessee in *Little*. *See Little*, 688 S.W.2d at 93.

FDIC further argues that under our holding in *Lee v. Crenshaw*, 562 F.2d 380 (6th Cir.1977), T.R.C.P. 3 should be viewed separately from the savings statute. However, at the time of our decision in *Lee* (even assuming it stands for the proposition for which FDIC cites it), we expressed reservations about what we termed our "educated guess" as to the relation between the Rule and the savings statute. Since *Lee*, the Court of Appeals of Tennessee has given us guidance on this issue in *Little*, which we find controlling.

Finally, FDIC argues that the goal of T.R.C.P. 3 is notice and so long as notice of the action is given within one year of the original filing, a plaintiff is entitled to rely on the original filing date for purposes of the limitations period. Since FDIC effected service on March 16, 1985, within one year of the first filing, plaintiff asserts the original date controls. However, we need look no further than the language of T.R. C.P. 3 to reject this argument. The Rule requires that a plaintiff who does not obtain service of process within thirty days must pursue one of two courses in order to rely on the date the plaintiff originally filed its complaint: (1) request issuance of new process within six months, or (2) recommence the action within one year. Giving notice within one year is insufficient. This conclusion is bolstered by the fidelity to the language of Rule 3 expressed by the Supreme Court of Tennessee in *Adams*, 548 S.W.2d at 309 ("[T]he plaintiff must ... recommence the action within one year ... in order to preserve the original commencement of the action as a bar to the running of a statute of limitations."). Moreover, the applicable statute of limitations ran at the latest in September 1984 under T.C.A. § 28-3-109(a)(3).

## III.

In summary, we hold that the noncompliance with T.R.C.P. 3 caused the April 2, 1984, state court filing date to expire. The present action was commenced on July 15, 1986, almost two years after the limitations period closed and thus is time-barred. For the foregoing reasons, we AFFIRM the summary judgment of the district court dismissing FDIC's action.

---

4. The Rule and the savings statute can work in conjunction. So long as a plaintiff complies with the Rule's requirement of requesting new process every six months, an action may be extended well beyond the limitations period without service. A plaintiff is then entitled to rely on the original filing date. If it should then happen that a nonmerits dismissal occurs, the savings statute would then operate to grant the plaintiff an additional one year from the date of dismissal to refile.